GANDY *v.* MAIN BELTING CO.[1]

(*Circuit Court, E. D. Pennsylvania.* June 29, 1886.)

1. PATENTS FOR INVENTIONS—BANDS OR BELTS—NOVELTY.
     Letters patent were granted in June, 1880, to Gandy, for a hard, even-surfaced, rigid, impervious, non-elastic belt, composed of cotton canvas or duck, having its warp threads larger than the weft; both warp and weft being hard-spun, the fabric tight woven, and folded, stiched, and saturated with linseed oil. *Held*, invalid for want of novelty.
2. SAME—DATE OF PATENT—REV. ST. § 4887.
     Section 4887 of the Revised Statutes cannot be successfully invoked to carry the date of an invention back to the date of a previously issued English patent, where the two patents are not alike.

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

In Equity.

*Amos Broadnax*, for complainants.

*E. Cooper Shapley*, for respondents.

BUTLER, J.  The bill charges infringement of the second claim of patent 228,186, for "cotton belting," etc., to which the defense set up is want of novelty and non-infringement.  The record shows that on the ninth of May, 1877, the plaintiff filed provisional specifications in the commissioners' office, England, and on July 20 of the same year obtained a patent for improvements in and appertaining to belts or bands "for driving machinery."  The substance of the specifications, and the claim, will be found in the following extract:

"The object of my invention is to manufacture belts or bands, for driving machinery, of cotton canvas, that will not give out by stretching, and which are not detrimentally affected by variations in the atmosphere, and at the same time are sufficiently pliable to allow of their running around small pulleys without cracking.  In carrying out my invention I manufacture belts or bands of cotton canvas or duck, hard woven, either in width to suit the size of such belts or bands without folding, or in wider widths, folded up, and in part made of separate thicknesses.  The cotton canvas or duck is put together either by hand, or by folders or guiders, and formed into a belt of the desired width and thickness, and then stitched with rows of stitching, being spaced about half an inch apart, the whole width of the belt.  The belt or band so constructed is then soaked or saturated in oil, such as linseed oil, either boiled or raw, or a mixture of such linseed oil with other oils or spirits, such oil or mixture being thinned, if necessary, by heat or spirits, to facilitate saturation."

Then he says:

"A modification may consist in soaking or saturating with oil, such as boiled linseed oil, canvas or duck, before it is made up into the belt or band by folding and stitching with rows of stitching, as before described.  After soaking or saturating the belts or bands, or the canvas or duck, before being formed into the belt or band, I pass it through rolls, or otherwise press it, to squeeze out the superfluous oil.  The belts or bands are then racked, to dry, and afterwards painted, or they may be used without being painted, as preferred by the user, the paint being made to impart a finish.  If the oiling is effected on the canvas or duck before forming such canvas or duck into the belt, I, by preference, dry it before stitching, and, after drying it, it is stitched and painted."

Next he adds this sentence:

"I would remark that I am perfectly aware that belts or bands of cotton canvas or duck are not new, as such have been made previous to my invention by folding and sewing, the sewing-machine being used for such sewing or stitching.  I myself have manufactured and sold belts so made, for the last four years.  I am also aware that belts or bands have been made by weaving cotton into the form and thickness of such belt or band, and afterwards saturated such belt with oil, such as boiled linseed oil.  I myself have manufactured and sold belts so made for the last three years."

Then he states the objections to these belts, and then he says:

"Having now described and particularly ascertained the nature of my invention, and shown how the same may be carried into effect, what I claim

as the invention secured to me by the hereinbefore in part recited letters patent, is constructing belts or bands for driving machinery, of cotton canvas or duck, woven hard, and stitched and saturated, or soaked, with oil, or any combination thereof, as herein described or set forth, or any modification thereof."

In 1877 the plaintiff filed the same specifications here, and applied for a patent. On examination, the office became satisfied that the alleged invention contained nothing new, and denied the application. In 1879 he filed new specifications, inserting after the words "cotton canvas or duck" the language, "composed of warp stouter than the weft," and altered the claim accordingly, making the latter read:

"The improved article of manufacture, consisting of hard, even-surfaced, rigid, impervious, non-elastic belt, composed of cotton canvas or duck, having its warp thread larger than the weft, both warp and weft being hard spun, the fabric tight woven, and folded, stitched, and saturated with linseed oil."

In 1883 the English patent, on coming before the chancery division of the high court of justice, in a suit brought for infringement, was declared invalid for want of novelty. The court found, as the patent-office at Washington had, previously, that everything embraced in the specifications and claim was old. From this finding, and the decree entered, an appeal was taken, which, in June, 1885, after hearing, was dismissed. In the year 1878, Robert B. Jones filed provisional specifications in England, and obtained a patent (No. 3,031) for "improvements in and appertaining to the manufacture of bands or belts for driving machinery," in which, after referring to the existing method of manufacturing such belts from "cotton canvas, and other light material, folded in layers, stitched together, and finished by oiling, painting, varnishing, and the like," says: "The improvement which constitute this, my present invention, consists in increasing the strength of the warp or longitudinal fibers or yarns over the weft or cross-fibers." The filing of this specification, it will be observed, antedates the plaintiff's application here about one year. Unless, therefore it can be successfully answered, it establishes a complete anticipation of the alleged invention. This seems entirely clear.

The plaintiff's specifications and claim, *without* the words "having its warp threads larger than the weft," contain nothing new, as has been decided by the patent-office here, and the courts in England. That these decisions were right is shown by the defendant's proofs. *With* the language just quoted the specifications and claim, in all material respects, are identical with those of Jones.

The plaintiff seeks to avoid this difficulty by treating the patent as a virtual reissue of the English patent, under section 4887 of the Revised Statutes; and thus carry the date of the invention back to the date of that patent. This position, however, cannot be sustained. If he had a valid English patent for anything, it is not for the invention claimed here. No reference is there made to the difference in weight of the warp and weft threads in the canvas, (the only mate-

rial matter, without which, as we have seen, the patent here would not have been granted.) The reference to the English patent in the specifications is unimportant, under the circumstances. If this reference could be appealed to, in the absence of contrary evidence, it certainly weighs nothing against the evidence found in the English patent. We are referred, however, to the testimony of Mr. Jenkins and Mr. Gandy to show that the invention dated back to 1876; that the plaintiff was then engaged in making this belting, using the peculiar canvas here claimed. If this is accepted as satisfactory proof of the fact, it goes too far, showing more than two years' public use and sale of the invention prior to his application. We allude to the application here, the only one we can consider. The bill must therefore be dismissed.

I have not reached this conclusion without some feeling of reluctance. If Mr. Benjamin Plumber, one of the defendants, stood alone, it is possible the result might be different. His instrumentality in procuring the patent; his representations to the plaintiff, who was not in the country, counseling and urging the expenditure of money to this end, with a view to his own interests in the premises; his subsequent conduct in entering the plaintiff's manufactory in England, to obtain an intimate knowledge of his methods of manufacture; persuading the plaintiff to embark in business here, under the supposed protection of the patent, with a view to obtaining employment for himself, (Plumber;) taken in connection with his subsequent conduct in establishing a rival manufactory and business, employing the plaintiff's system and methods, infringing his patent, and attacking its validity,—are not calculated to excite much sympathy for him. He is not alone interested, however, and those matters which were urged against him (as in the nature of an estoppel) cannot be used against others. A decree must therefore be entered dismissing the bill.